FRANK PARKER v. CHICAGO GREAT WESTERN RAILROAD
COMPANY.[1]

November 23, 1923.

No. 23,627.

**Verdict for $9,500 not excessive.**
> Record considered and it is *held* that the verdict is justified by the evidence; that it is not excessive and does not appear to have been rendered under the influence of passion and prejudice.

Action in the district court for Goodhue county to recover $50,000 for injuries received while in defendant's employ. The case was tried before Converse, J., who when plaintiff rested denied defendant's motion to dismiss and at the close of the testimony denied motions by both parties for a directed verdict, and a jury which returned a verdict for $9,500. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Briggs, Weyl & Briggs*, for appellant.
*Barton & Kamuchey*, for respondent.

QUINN, J.

This is an action to recover for personal injuries. At the trial there was a verdict in favor of the plaintiff. This appeal is from an order denying defendant's motion for judgment or for a new trial.

Defendant's passenger station at Red Wing is near the center of town. Its switching yards extend from near the station west for nearly 2 miles. Its main track south extends from the station west along the southerly side of the switching tracks to the southwestern

[1]Reported in 195 N. W. 892.

extremity of the yards and then veers to the south towards Rochester. The main track north extends from the station west along the north side of the switching tracks to the northwestern extremity of the yards, then on towards St. Paul. There is a track extending north from the main line where it veers toward Rochester, connecting with the main line to St. Paul, thereby shaping the switching yards into the form of a triangle. Across the main track from the southwest corner of the yards, about 2 miles from the station, is located the tannery referred to in the record.

On the day of the accident, December 16, 1921, the weather was inclement. There was a freight car in the yard near the station which contained merchandise to be delivered at the tannery. The yard engine, operated by plaintiff, coupled onto this car and the switching crew, consisting of the yard master and 2 assistants, got on the cab. The yard engine then started west on the main track toward the tannery. In the meantime an extra freight from the south approached the yard limits, moving easterly toward the station at the rate of from 8 to 10 miles per hour. There was an 8 degree curve in the main track between the two on-coming locomotives. On the north of the curve was a rise or small elevation of earth sufficient to obstruct the view from one locomotive to the other as they approached the curve. At almost the same moment, when they were about 700 feet apart, each engineer looking across the elevation, observed smoke or steam from the other's locomotive. At this critical moment the yard engine with one car was moving at from 10 to 12 miles per hour and the other was coming from 8 to 10 miles per hour. Plaintiff applied the brakes; reversed the engine; called to the other men to jump, and came to a stop at the center of the curve, at which time the freight locomotive struck it. The impact shoved the yard engine back about 2 car lengths.

The plaintiff contends that there was evidence of negligence on the part of the engineer of the freight train, and of the trainmaster in failing to inform the yardmaster of the approach of the freight train, and he also contends that there was presumptive negligence arising from the collision, thus rendering the defendant guilty of negligence and entitling plaintiff to recover, under chapter 187, p.

253, Laws 1915. The defense is that the freight crew was not negligent, that plaintiff violated the rule regarding the operating of his engine; that he did not keep a proper lookout, and that the accident was caused solely through plaintiff's own negligence.

Under the rules, the yardmaster has charge of the yard, the switching of cars, and the men employed therefor. He receives instructions from the trainmaster. In regard to the switching of cars and the making up of trains, the enginemen must obey orders from the yardmaster. Within yard limits the main track may be used, protecting against first-class trains. All other trains must approach and move within the yard limit, under control and prepared to stop, responsibility for accident resting with the approaching train. Under these rules, which are promulgated by the railroad company, the question of negligence was for the jury under the showing. Whatever the practice may have been, it was the duty of the crew on the freight train, when approaching yard limits, to have their train under control, so as to be able to stop within the distance the track is seen to be clear. It was the duty of the engineer on the approaching train, when he saw the smoke from the other locomotive, to apply his brakes and use every effort to stop his train, or bring it under complete control. In these respects the evidence made a clear question for the jury, as to the negligence attributable to the company.

While the yardmaster might have learned whether or not an extra freight train was scheduled to come into the yard limits, it had never been the practice, nor are we able to understand why it was any more his duty to inform himself in this respect, than it was for the trainmaster to furnish him with the information. However, this phase of the case was not gone into in detail upon the trial nor in the briefs of counsel, and we pass it.

The trial court submitted all the issues to the jury, under careful instructions, save as to the negligence of the yardmaster Smith, which resulted in a verdict of $9,500 in favor of the plaintiff. His injuries were serious and might have warranted greater damages. The jury were allowed to consider plaintiff's negligence as compared with the negligence of the defendant, and probably did so.

We are satisfied that the parties had a fair trial, that the evidence justified the verdict, and that the amount thereof is not excessive.

Affirmed.